IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,         :
                                  :
            Plaintiff,            :
                                  :
      v.                          :   Criminal Action No. 07-136-JJF
                                  :
ERIC HOLMES,                      :
                                  :
            Defendant.            :
                                  :

Colm F. Connolly, Esquire, United States Attorney, and Martin C. Meltzer, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Luis A. Ortiz, Esquire, Assistant Federal Public Defender of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

January 17, 2008
Wilmington, Delaware

FILED
JAN 17 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Farnan, District Judge.

Pending before the Court is Defendant's Motion To Suppress Physical Evidence And Statements. (D.I. 11.) For the reasons discussed the Court will deny the Motion.

I. BACKGROUND

Defendant, Eric Holmes, is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On November 9, 2007, Mr. Holmes filed the instant Motion To Suppress Physical Evidence And Statements (D.I. 11) contending that the police lacked reasonable suspicion to initiate the traffic stop that led to the discovery of the gun, which forms the basis for the charges against Mr. Holmes. Mr. Holmes also contends that any statements made by him during or subsequent to the alleged illegal search should be suppressed pursuant to the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The Government filed a Response. (D.I. 13.) On December 17, 2007, the Court conducted an evidentiary hearing. The Government filed a post-hearing letter (D.I. 15) to supplement its pre-hearing response. Mr. Holmes waived his right to file any post-hearing submissions. (D.I. 17.)

II. FINDINGS OF FACT

1. On October 7, 2007, at approximately 1:16 a.m., Wilmington Police Officers Kucharski and Hamrick were on routine patrol in a marked car in the area of Lombard Street, in the City

1

of Wilmington. (Tr. 14.)

2.  While stopped at a stop sign on the southbound side of Lombard Street, the officers observed a white Buick traveling eastbound on 9th Street. From the light of the headlights and the streetlights, the officers were able to clearly identify the driver of the vehicle as Mr. Holmes, whom the officers had known from previous encounters. (Tr. 4, 6, 14-15, 46-47.)

3.  The officers were aware that Mr. Holmes' license was suspended. (Tr. 5, 48.)

4.  The officers pulled behind Mr. Holmes' vehicle and followed it. The officers observed Mr. Holmes make at least two turns without using a turn signal. (Tr. 6, 20-21, 42, 50-51.) The officers activated their emergency lights and siren. The vehicle did not stop immediately, but instead turned into the parking lot of Compton Towne Court Apartments.

6.  As the vehicle was turning into the parking lot, the officers observed Mr. Holmes learning forward in his seat and making a distinct turning movement towards the rear of the vehicle with his right arm. (Tr. 6, 12, 54.)

7.  Once the vehicle came to a stop, the officers approached the vehicle with flashlights and illuminated the interior of the vehicle. Officer Kucharski saw in plain view, located on the floorboard between the legs of a minor female passenger, a gun. Officer Kucharski alerted his partner to the

2

presence of the gun, using a hand gesture over the top of the vehicle. (Tr. 5, 7-8, 43-44, 55.)

8. Mr. Holmes, the minor female passenger, and a third passenger were removed from the car and taken to Police Central. A loaded Baretta .9 millimeter handgun was retrieved from the vehicle. (Tr. 9.)

9. All three occupants of the vehicle were interviewed at Police Central by Detective Parrott. Before their interviews, each occupant was given his or her Miranda warnings by Detective Parrott in the presence of Officer Kucharski. (Tr. 9-10, 26-27, 33.)

10. The minor female passenger provided a written statement that said:

> I was picked up around 12:30. I just received a call that my daughter is sick and she's breathing hard. I received a ride from an old friend named Eric Holmes and his friend. I did not know him. As Eric turned off Fifth Street, he was signaled to pull over into Compton townhouses. At that time, he put a gun under the seat.

(Tr. 11.)

11. Although the minor female passenger's statement described the location of the gun as "under the seat," Officer Kucharski observed the gun located in plain view on the rear floorboards between the female passenger's legs. (Tr. 12.)

12. In addition, Detective Parrott testified that the female minor passenger told him during questioning that Mr.

3

Holmes reached behind the seat and put the gun on the floorboard between her feet, just before he was pulled over. The minor female passenger also told Detective Parrott that in the lock-up area, Mr. Holmes tried to persuade her to take responsibility for the gun. The minor female passenger also explained that she knew that Mr. Holmes kept a gun in his front pants pocket, concealed by a shirt. (Tr. 34-35.)

### III. CONCLUSIONS OF LAW

13. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ." U.S. Const, amend IV.

14. Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 (1968).

15. Reasonable suspicion to initiate a Terry stop requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an

untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003). Whether the police have reasonable suspicion is determined from the totality of the circumstances. Cortez, 449 U.S. at 417.

16. In this case, the Court concludes that Officers Kucharski and Hamrick had reasonable suspicion to initiate an investigatory Terry stop of the vehicle driven by Mr. Holmes. In reaching this conclusion, the Court credits the testimony of Officers Kucharski and Hamrick, which was uncontroverted by Mr. Holmes. Both officers knew that Mr. Holmes was driving on a suspended license in violation of 21 Del. C. § 2756 and observed him making several turns without a turn signal in violation of 21 Del. C. § 4155. "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." United States v. Moorefield, 111 F.3d 10, 12 (3d Cir.1997). Accordingly, the Court concludes that Mr. Holmes' vehicle was legally stopped for a traffic violation.

17. The Court also concludes that the firearm discovered by Officer Kucharski is admissible evidence. Officer Kucharski observed the firearm in plain view on the floor between the rear

5

passenger's legs. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236 (1968). In addition, the use of the officer's flashlight to illuminate the interior of the vehicle did not constitute an illegal search of the vehicle and did not violate Mr. Holmes' Fourth Amendment rights. U.S. v. Dunn, 480 U.S. 294, 305 (1987); ("[I]t is 'beyond dispute' that the action of a police officer in shining his flashlight to illuminate the interior of a car, without probable cause to search the car, 'trenched upon no right secured ... by the Fourth Amendment.'") (quoting Texas v. Brown, 460 U.S. 730, 739-740 (1983)).

18. As for any statements made by Mr. Holmes, the Court likewise concludes that the statements are admissible evidence. The Fifth Amendment to the United States Constitution provides that "no person ... shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const, amend V. In Miranda v. Arizona, the Supreme Court held that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective

>     means are devised to inform the accused persons of
>     their right of silence and to assure a continuous
>     opportunity to exercise it, the following measures are
>     required.  Prior to any questioning, the person must be
>     warned that he has a right to remain silent, that any
>     statement he does make may be used as evidence against
>     him, and that he has a right to the presence of an
>     attorney, either retained or appointed.  The defendant
>     may waive effectuation of these rights, provided the
>     waiver is made voluntarily, knowingly and
>     intelligently.

384 U.S. 436, 444-45 (1966).

19.  Mr. Holmes and the other occupants of the vehicle were properly given their Miranda warnings by Detective Parrott, whose testimony the Court also credits.  Mr. Holmes makes no substantive argument that he did not waive his Miranda rights, and his argument is based on his contention that his statements constituted the fruit of an illegal search and seizure.  Because the Court has rejected Mr. Holmes' Fourth Amendment argument, the Court cannot conclude that his statements are inadmissable under the fruit of the poisonous tree doctrine.

## IV.   CONCLUSION

For the reasons discussed, the Court will deny Mr. Holmes' Motion To Suppress Physical Evidence And Statements.

An appropriate Order will be entered.