IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 07-136-JJF |
| | ) |
| ERIC HOLMES, | ) |
| | ) |
| Defendant. | ) |

**RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO
IMPEACH GOVERNMENT WITNESS WITH "REVERSE 404(b)" EVIDENCE**

Defendant Eric Holmes seeks to impeach government witness Leslie Inge at trial with photographs and other information purportedly downloaded off of her Myspace.com homepage. Defendant argues that the Myspace information provides evidence that Ms. Inge "involved herself in a violent drug sub-culture, and thus had a motive to possess the firearm" at issue in defendant's trial. Def.'s Mot., at 1. Defendant's motion, however, is wholly unsupported by Federal Rules of Evidence 404(b), 608(b), and a well-established body of case law interpreting those rules. The motion is an attempt to confuse the true issue at trial, defendant's illegal possession of a firearm, and to turn the proceedings into a mini trial about Ms. Inge's character – an issue which has no relevance to the defendant's illegal gun possession. Defendant's purported course of action also seeks to make an end-run around Rule 608(b) by attempting to impeach Ms. Inge with salacious material that is unrelated to her "character for truthfulness or untruthfulness." FED. R. EVID. 608(b). The Rules of Evidence were designed to prevent trials from turning into such spectacles. Thus, for the reasons set forth below, defendant's motion should be denied.

### I. Defendant Cannot Demonstrate a Proper Purpose to Introduce the Myspace.com Information Under Rule 404(b)

Defendant asserts that he should be permitted to admit the Myspace.com information as "reverse 404(b)" substantive evidence. The Federal Rules of Evidence provide that "[e]vidence of other crimes, wrongs, or acts is not admissible to show action in conformity therweith." Fed. R. Evid. 404(b). In certain circumstances, however, other acts evidence may be admissible for purposes other than propensity, such as to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake." Id. The United States Court of Appeals has developed a four-part test to determine whether evidence is admissible under Rule 404(b): (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003). In order to introduce such evidence, the proponent "must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which may be the inference that the [witness] has the propensity to commit the crime charged.*" United States v. Williams, 458 F.3d 312, 319 (3d Cir. 2006) (citing United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)) (emphasis added).

"Reverse Rule 404(b) evidence" is "most commonly introduced by a defendant to show that someone else committed a similar crime or series of crimes, implying that he or she also must have committed the crime in question." Id. at 316 (citing 2 WIGMORE ON EVIDENCE, § 304, at 252 (J. Chadbourn rev. ed. 1979)). Despite its defensive use, the same safeguards against introducing propensity evidence apply in the reverse Rule 404(b) context. Id. at 314 (stating that the "reverse Rule 404(b)" doctrine does not "afford defendants more leeway in admitting propensity evidence in

violation of the prohibition of Rule 404(b)"). Two Third Circuit decisions – one admitting "reverse Rule 404(b)" evidence and the other precluding such evidence – are instructive in understanding the doctrine.

In <u>United States v. Stevens</u>, 935 F.2d 1380 (3d Cir. 1991), the defendant was charged with robbery and sexual assault at Fort Dix. At trial, the government introduced the testimony of two witnesses who each identified the defendant as the assailant. In an attempt to argue that the defendant was mistakenly identified, the defendant sought to introduce the testimony of a victim of a similar assault at Fort Dix that took place three days following the alleged crime. The victim of the second assault was poised to testify that the man who assaulted him was not the defendant, although the assailant fit a similar description. The district court excluded the testimony, and the defendant appealed. The Third Circuit held that the evidence was admissible in order to rebut the alleged mistaken identifications. The evidence was relevant for a proper 404(b) purpose, identity, because there were striking similarities between the two assaults that happened in close proximity to one another. In addition, the potential for waste of time or misleading the jury if the evidence was admitted was minimal because "there was no appreciable risk that Stevens's presentation of 'reverse 404(b)' evidence would have degenerated into a mini-trial about whether or not Stevens had robbed [the victim]." <u>Id</u>. at 1406. Rather, the evidence went to the heart of the defendant's mistaken identification defense. Thus, the Court held that the defense witness should have been permitted to testify about the later assault to demonstrate that it was possible that a person other than the defendant committed both crimes. <u>Id</u>. at 1406.

In contrast, in facts similar to this case, the Court of Appeals held in <u>Williams</u> that a defendant was precluded from introducing "reverse 404(b)" evidence in his trial on charges of being

a felon in possession of a firearm. In Williams, the police pulled over a car in which the defendant, a passenger, fled the scene and ran into a nearby house. The police eventually recovered a firearm inside the residence. At trial, citing Stevens, the defendant sought to introduce evidence that the driver of the vehicle had been recently convicted of illegally possessing a firearm. The Court of Appeals stated that the defendant misread Stevens to grant more leeway to a criminal defendant to introduce propensity evidence under Rule 404(b). Id. at 317 (noting that "the introduction of bad acts evidence to show propensity applies regardless of whether the evidence is offered against the defendant or a third party"). The Court of Appeals rejected the defendant's argument that evidence of the driver's prior gun conviction was admissible for a proper purpose under Rule 404(b). The prior conviction did not supply the driver with the "opportunity" to commit the crime for which the defendant was charged because there was no evidence that the prior crime involved the same gun or same type of gun. Id. at 318. Moreover, the driver's prior conviction was "too generic" to prove identity, since "the mere prior possession of a firearm, without more, is not by any means a distinctive act, and does not prove identity." Id. Thus, the Court of Appeals held that the prior conviction was properly excluded because it "was probative only as much as it showed that [the driver] had a propensity to carry a weapon – the purpose proscribed by Rule 404(b)." Id. at 319. Other courts of appeals have reached the same conclusion in similar contexts. See United States v. Lucas, 357 F.3d 599, 606 (6th Cir. 2004) (holding that a defendant on trial for cocaine trafficking was precluded from admitting his companion's prior conviction for possessing and selling cocaine); United States v. Spencer, 1 F.3d 742 (9th Cir. 1992) (prohibiting a defendant from presenting evidence that another individual who owned the vehicle in which the defendant was arrested for gun possession had possessed a gun in a different car several days after the defendant's arrest).

Here, defendant filed a motion in limine seeking to impeach Ms. Inge with photographs and captions from her Myspace.com web page to show that her "involvement with a violent **drug** sub-culture provided her with a **motive** to possess a firearm[.]" Def.'s Mot. at 2 (emphasis added). Defendant wants to introduce substantively three categories of information: (1) several photographs showing the defendant posing in sexually suggestive positions with United States currency; (2) a photograph of the defendant with a cigar (which is unlit and still in the wrapper); and (3) a caption setting forth the type of man she would like to meet. Defendant argues that Ms. Inge's use of the phrase "ride or die" in the caption "reflects Ms. Inge's knowledge that she is participating in a violent sub-culture." Def.'s Mot. at 2.

In certain situations, a party may properly introduce evidence of motive under Rule 404(b). "Motive is the impetus that supplies *the reason for a person to commit a criminal act*." 4 WEINSTEIN'S ON EVIDENCE § 404.22[3] (emphasis added). See also BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "motive" as "something, esp. willful desire, that leads one to act"). Motive answers the fundamental question of *why* a person undertook a particular act. For example, in United States v. Cruz, the United States Court of Appeals for the Third Circuit held that evidence of the defendant's parole status was admissible to establish, *inter alia*, the defendant's motive of using co-defendants to perform hand-to-hand street transactions in order to avoid the risk of parole revocation. 326 F.3d 392, 395-96 (3d Cir. 2003). The evidence was relevant to show why the defendant delegated drug distribution activities to others, and it helped negate the defendant's defense at trial that his physical absence from drug activities proved that the defendant was not involved in the conspiracy. Id. at 395. Similarly, in United States v. Syriuth, the Court of Appeals upheld the admission of the defendant's prior sexual assault conviction in a kidnapping case. The

5

Court of Appeals concluded that the evidence demonstrated that the defendant's motive to kidnap his victim was to gain her companionship and to sexually assault her. 98 F.3d 739, 745-47 (3d Cir. 1996)

Several courts have concluded that evidence of *drug trafficking*, not simple drug use or possession, may be introduced to show a defendant's motive to possess a firearm under Rule 404(b).[1] See United States v. Weems, 322 F.3d 18, 25 (1st Cir. 2003) (finding that testimony regarding drug activity at the defendant's residence was admissible in his gun possession trial under Rule 404(b)) ; United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989) (concluding that evidence of drug trafficking was admissible to show the defendant's motive to possess a gun in order to protect his drug stash, as "[f]irearms are known 'tools of the trade' of narcotics dealing"); see also United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002) (stating that evidence of drug dealing was admissible to supply a motive to possess a gun, in order to protect the defendant's drugs and his drug money); United States v. Claxton, 276 F.3d 420, 222-23 (8th Cir. 2002) (holding that evidence of drug trafficking was relevant to show the defendant's motive to possess a gun); United States v. Carrasco, 257 F.3d 1045, 1048-49 (concluding that evidence of the defendant's drug trafficking demonstrated a motive to possess a firearm, as there is a connection between guns and drugs due to the nature of danger inherent in the drug trade). The direct evidence of drug trafficking in each of these cases supplied a motive for the drug dealer to possess a gun in order to protect the drug dealer's turf and drug profits.

---

[1] Drug usage may supply a motive to commit a crime in certain narrow circumstances, such as where a drug habit is introduced to show that a defendant committed a robbery in order to finance his drug habit. See, e.g., United States v. LaFlam, 369 F.3d 153, 156-57 (2d Cir. 2004); United States v. Bitterman, 320 F.3d 723, 727 (7th Cir. 2003); United States v. Miranda, 986 F.2d 1283, 1285 (9th Cir. 1993).

6

The information submitted by defendant in this case, however, is not evidence of drug trafficking. It is not even evidence of drug usage. Photograph 8 is a picture of Ms. Inge with a cigar, which is *still in the wrapper*, in her mouth. It is difficult to comprehend how a photograph of a cigar is evidence that Ms. Inge is a drug trafficker, let alone that she needs a gun to protect her alleged drugs and drug profits. In addition, defendant has failed to articulate how the photographs of Ms. Inge in sexually suggestive poses with money bear any relation to her desire to possess a gun. The defendant has not provided the Court with an explanation as to how he knows that the money even belonged to Ms. Inge, or, if it did, that it was an illegal source of income. See Def.'s Mot. at 2 (baldly stating that Ms. Inge has "no source of income"). Finally, defendant's emphasis on the phrase "ride or die" is particularly puzzling. The term "Ride or Die" is used frequently in popular culture, especially among young people. One Internet dictionary lists multiple definitions for the term, several of which do not bear any relation to a "violent subculture." See http://www.urbandictionary.com/define.php?term=ride+or+die (Visited May 10, 2008). In fact, in the past decade the phrase has been used as the title of (1) at least two movies (RIDE OR DIE (Ardustry Home Entertainment 2006), RIDE OR DIE (Strange Fruit Films 2003); (2) several popular songs (Jennifer Lopez, *Ryde or Die*, on REBIRTH (Epic Records 2005); DMX, *Ryde or Die*, on RYDE OR DIE, VOL. 2 (Interscope Records 2000); Jay-Z, *Ride or Die*, on VOL. 2, HARD KNOCK LIFE (Roc-a-fella Records 1998); and (3) a popular video game (187 RIDE OR DIE (Ubisoft 2006)).

In short, defendant cannot demonstrate the necessary link under Rule 404(b) that the Myspace.com evidence establishes Ms. Inge's motive to possess the gun. Rather, the information would confuse the issue at trial and transform the proceedings into a mini trial regarding Ms. Inge's character. See Williams, supra. In the decisions permitting evidence of drug trafficking in gun

7

possession cases, the logical link between drug trafficking and gun possession is the motive of drug traffickers to possess guns in order to protect their drugs and drug profits. Here, no logical link exists between photographs allegedly posted by Ms. Inge on her Myspace.com page and drug trafficking, yet alone gun possession. Defendant's veiled purpose is to use the information to argue to the jury that, because Ms. Inge posted some questionable photographs on her Myspace.com page and has a questionable character, you should not believe her testimony. Rule 404(b) was designed to prevent such character attacks that bear no relevance to the issues at trial. Thus, defendant should be prohibited from introducing the information from the Myspace page as substantive evidence under Rule 404(b).[2]

## II. Defendant May Not Impeach Ms. Inge Regarding the Information on her Myspace.com Account Under Rule 608(b)

The Court should also prohibit defendant from introducing the Myspace.com information to challenge Ms. Inge's credibility. In United States v. Davis, 183 F.3d 231, 257 n.11 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit held that district courts should consider the permissibility of cross-examination into prior bad acts to challenge a witness's *credibility* under Rule 608, not Rule 404(b). The Court of Appeals's holding is consistent with Rule 404, which provides:

> (a) Character evidence generally. – Evidence of a persons's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except
>
> (3) Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

---

[2] Apart from the issue of the admissibility of the Myspace.com information, defendant has not indicated in his motion how he would be able to authenticate the information on the Myspace.com page in order to introduce it as substantive evidence. See, e.g., Fed. R. Evid. 901(9).

8

Fed. R. Evid. 404(a)(3). Thus, whether defendant can impeach Ms. Inge with information from her Myspace.com page depends upon whether such a course of action is permitted under Rules 607, 608, and 609.

Rule 607 states that the credibility of a witness may be attacked by any party, and Rule 609 covers impeachment of witnesses based on prior convictions. Since defendant's motion seeks to impeach Ms. Inge with conduct not resulting in a conviction, Rule 609 is inapplicable. Thus, the inquiry is governed by Rule 608. Rule 608 provides a limited mechanism in which a party may impeach specific instances of conduct of a witness:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. *They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness*, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters that relate only to character for truthfulness.

Fed. R. Evid. 608(b) (emphasis added).

Defendant's purported reason for introducing Ms. Inge's testmony – to show her involvement in a "violent sub-culture" – has no bearing on her credibility at trial. Courts have uniformly restricted parties from impeaching witnesses on bad acts that have no relationship to the witness's veracity.[3] Davis, 183 F.3d at 257 (holding that an inquiry on cross-examination into a past

---

[3] See 4 WEINSTEINS'S FEDERAL EVIDENCE § 608.22[2][a]("Specific instances of conduct may be inquired into on cross-examination if they are probative of the witness's truthfulness or untruthfulness. Conversely, it is improper to inquire about instances of conduct that do not reflect on the witness's character for truthfulness or untruthfulness... Not all criminal, illegal, or immoral behavior is relevant to truthfulness. For example, violent crimes do not usually reflect the witness's

event in which the defendant put a gun to a prostitute's head was prohibited under Rule 608 because it did "not appear to be probative of truthfulness"); see also United States v. Flaherty, 295 F.3d 182, 190-91 (2d Cir. 2002) (holding that defense counsel in a drug conspiracy trial was properly prohibited from impeaching a government cooperating witness about the witness's involvement in a murder); United States v. Turner, 104 F.3d 217 (8th Cir. 1997) (stating that the district court did not err in precluding a defendant from cross-examining a witness regarding a specific incidence of alleged drug activity that the witness had been involved in several years earlier); United States v. Bentley, 702 F.2d 1498, 1510 (8th Cir. 1983) (holding that evidence of a witness's drug operation was not indicative of a lack of truthfulness under Rule 608(b)); United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (finding that the defendant could not impeach a government witness in a drug distribution case with his "prior acts of sodomy on children and his psychiatric treatment therefor"); United States v. Hill, 550 F.Supp. 983, 990 (E.D. Pa. 1982), aff'd 716 F.2d 893 (3d Cir. 1983) (precluding defense counsel from impeaching DEA agent about acts of being a disorderly person, trespass, and false imprisonment as such events were not probative of truthfulness).

This Court confronted a similar situation in United States v. Sarraga-Solana, No. 04-144-6-JJF, 2005 WL 3701472, *3 (D. Del. Oct. 6, 2005) (Farnan, J.). In that case, the Government sought to impeach the defendant with evidence regarding his prior drug use and possession, as well as his use of fictitious aliases in the past. Although this Court held that the government could impeach the defendant with his use of prior aliases in the past, as such conduct bore directly on the defendant's veracity, the Court prohibited the Government from "mentioning that the aliases were used by Defendant when he was charged with a drug-related crime." Id. As this Court noted, "Drug use and

---

truthfulness. Neither do acts constituting disorderly conduct.").

possession are not probative of truthfulness, and therefore, cannot be used to impeach a witness's character for truthfulness." Id.

Similarly, the evidence with which Defendant seeks to impeach Ms. Inge is not probative of truthfulness or untruthfulness. Even accepting defendant's argument that the Myspace.com information establishes evidence of Ms. Inge's bad conduct, rather than just youthful *braggadocio,* the information has no bearing on the credibility of Ms. Inge's trial testimony. Thus, defendant should be precluded from impeaching Ms. Inge with the information under Rule 608(b).

### III. Conclusion

The Rules of Evidence prevent trials from turning into sideshows involving collateral matters. Defendant's request to introduce into evidence salacious information about a Government witness is an attempt to confuse the issues at trial and to divert the jury's attention from evidence establishing defendant's guilt. For these reasons, the Government respectfully requests that defendant's motion be denied and that defendant be precluded from (1) introducing the Myspace.com information as substantive evidence, and (2) impeaching the defendant regarding the information on her Myspace.com web page.

         Respectfully submitted,

         COLM F. CONNOLLY
         United States Attorney


         /s/ Robert F. Kravetz
By:   Robert F. Kravetz
      Assistant United States Attorney

Dated: May 10, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action No. 07-136-JJF ) |
| ERIC HOLMES, | ) ) ) |
| Defendant. | ) ) |

### ORDER

AND NOW, this _____ day of _____, 2008, having considered Defendant's Motion to Admit "Reverse 404(b) Evidence" and the Government's response hereto, it is hereby **ORDERED** that Defendant's motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant is not permitted to introduce substantive evidence relating to information purporting to be from Leslie Inge's Myspace.com web page, nor is defendant permitted to question Ms. Inge about the Myspace.com information on cross-examination.

By the Court:

_____
Hon. Joseph J. Farnan, Jr.
United States District Judge